IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR244 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| DAPHNA J. GOREN, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Justin Herdman, United States Attorney, and Payum Doroodian, Special Assistant United States Attorney, and respectfully submits this memorandum for the sentencing of Defendant Daphna J. Goren.  The United States agrees with the Presentence Investigation Report ("PSR") that the Defendant's adjusted advisory Sentencing Guidelines offense level is 13 after acceptance of responsibility and her Criminal History Category is I. (Doc. No. 12 at ¶ ¶ 26, 31).  Thus, the advisory Guidelines range is 12 to 18 months. (Doc. No. 12 at ¶ 53).  For the reasons set forth below, this Court should impose a sentence within the advisory Guidelines range, as agreed by the parties in the plea agreement.

I.  **FACTUAL BACKGROUND**

Defendant was born in 1946 in Israel. (Doc. No. 12 at ¶ 35). Her parents are both survivors of The Holocaust. (Doc. No. 12 at ¶ 37).  Defendant has earned numerous bachelor's and master's degrees and reported last year that she earned $66,439 in gross income. (Doc. No. 12 at ¶ 48, 55).

On July 12, 2011, Defendant's mother, H.G., passed away. (Doc. No. 12 at ¶ 9). Prior to her death, H.G. was a beneficiary of Title II Retirement Insurance Benefits from the Social Security Administration ("SSA") as well as a beneficiary of Holocaust Survivors Benefits from the Republic of Austria. (Doc. No. 12 at ¶ 9). H.G. also received an annuity from the Teachers Insurance and Annuity Association College Retirement Equities Fund ("TIAA-CREF"). (Doc. No. 12 at ¶ 9). Because Defendant continued to maintain H.G.'s checking account with Key Bank and further never informed SSA, Republic of Austria, or TIAA-CREF that her mother passed away, H.G. continued to receive the three payments above on a monthly basis after her death. (Doc. No. 12 at ¶ 10).

Each month for 40 consecutive months, SSA deposited approximately $2,200 per month into H.G.'s checking account, which Defendant methodically withdrew and spent for her own personal benefit. (Doc. No. 12 at ¶ 11). After discovering the scheme in 2014, SSA stopped the payments, but not until Defendant withdrew and spent $91,403 in benefits intended for her mother. (Doc. No. 12 at ¶ 6, 11). Likewise, for 10 months, the Republic of Austria continued to pay roughly $3,300 per month in Holocaust Survivors Benefits, totaling $33,694.04, which Defendant also withdrew from H.G.'s checking account and spent. (Doc. No. 12 at ¶ 11). Finally, for 17 months, TIAA-CREF continued to mail annuity checks of approximately $1,100 per month, totaling $17,407.69, to H.G.'s home address, which Defendant took, forged her mother's signature, and presented to Key Bank for deposit into an account for Defendant to later withdrew and spent for her own personal benefit. As a result of executing the three above schemes, Defendant stole approximately $142,402.73 combined from SSA, TIAA-CREF, and the Republic of Austria's fund intended for Holocaust Survivors.

**II.	APPLICATION OF § 3553(a) FACTORS**

Considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense, a within-Guidelines sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide a just punishment for the offense, and afford adequate deterrence.

Defendant chose to use her mother's death as an opportunity to defraud the federal government, a foreign country, and private organization out of nearly $142,402.73 over the course of nearly 3.5 years. Without remorse, Defendant stole month after month, year after year, until she was forced to stop after discovery of Defendant's criminal schemes.  As an educated-person understanding the repercussions of her actions, she made the calculated decision to indiscriminately steal any way she could, even if it meant forging her dead mother's signature on checks.  Yet, by her account, depression and the loss of her parents caused her to greedily supplement her income with as much as $6,600 in stolen benefits per month. (Doc. No. 14: Defendant's Sentencing Memorandum, at p. 7).   Perhaps most egregious is her theft of funds from those who endured unspeakable horrors of the Holocaust.  For this act alone, just punishment for Defendant's conduct warrants imposition of a sentence that includes a period of incarceration.  Thus, given the nature and circumstances of the offense, this Court should not hesitate to impose a sentence within the Guidelines range, which already takes into account the Defendant's lack of criminal history.

Defendant's sentence must reflect the seriousness of the offense and afford adequate deterrence to others who may commit similar offenses or who may believe that stealing benefits from organizations or the federal government is a victimless crime.  Stealing from such organizations like SSA deprives it of the ability to effectively evaluate and provide support to the elderly and disabled who need these benefits to survive.  In effect, the Defendant stole from

3

individuals in society who need benefits the most and have no other source of income, and even those who survived concentration camps during World War II.  Defendant's sentence provides this Court with a valuable opportunity to not only impose just punishment to the Defendant, but also to show that stealing benefits is a serious crime.  Moreover, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.'" *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)); see also *United States v. Musgrave*, 761 F.3d. 602, 609 (6th Cir. 2014) (noting that financial crimes "are especially susceptible to general deterrence" and "there is a general policy favoring incarceration for these crimes").  A within-Guidelines sentence will serve the purposes of deterrence for difficult to detect crimes such as these, as well as the other sentencing factors.

### III.     CONCLUSION

      For the forgoing reasons, the United States respectfully requests that the Court impose a sentence within the advisory Guidelines range.

      Respectfully submitted,

      JUSTIN HERDMAN
      United States Attorney

By:   /s/ Payum Doroodian
      Payum Doroodian (DC: 1035376)
      Special Assistant United States Attorney
      United States Court House
      801 W Superior Ave, Suite 400
      Cleveland, OH 44113
      (216) 622-3739
      (216) 522-2403 (facsimile)
      Payum.Doroodian@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 20th day of September 2018 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Payum Doroodian
    Payum Doroodian
    Special Assistant U.S. Attorney